

FILED
NOV 30 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | I N D I C T M E N T |
| ) | |
| Plaintiff, ) | **1 :22 CR 688** |
| ) | |
| v. ) | CASE NO._____ |
| ) | Title 18, United States Code, |
| PAVIELLE SMITH, ) | Sections 1035, 1347, and 2 |
| ) | **JUDGE GWIN** |
| Defendant. ) | |

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

**A. Defendant**

1. Defendant PAVIELLE SMITH ("SMITH") was a resident of Cleveland, Ohio and employed by Company 1. Company 1 provided counseling services for Medicaid beneficiary clients. Among her various duties at Company 1, SMITH was a Qualified Behavioral Health Specialist and provided counseling services for Medicaid beneficiary clients.

**B. Medicaid Program**

2. The term "health care benefit program," as defined in 18 U.S.C. § 24, means any "public or private plan or contract, affecting commerce, under which any medical benefit, item or service" was provided to any individual, and includes any individual or entity who provides a medical benefit, item or service for which payment may be made under the plan or contract. Medicaid was a health care benefit program. The Centers for Medicare and Medicaid Services ("CMS") was the agency responsible for the administration of the Medicaid program. Medicaid

paid health care providers, pursuant to written agreements, on the basis of reasonable charges for covered services provided to beneficiaries.

3. Medicaid, established by Congress in 1965, provided medical insurance coverage for individuals whose incomes were too low to meet the costs of necessary medical services. Approximately 60% of the funding for Ohio's Medicaid program came from the federal government. The Ohio Department of Medicaid ("ODM"), headquartered in Columbus, Ohio, administered the Medicaid program in Ohio. ODM, received, reviewed, and obtained formal authority to make payment of Medicaid claims submitted to it by health care providers.

4. ODM contracted with Medicaid Managed Care Entities ("MCEs") through contracts known as Contractor Risk Agreements ("CRAs"), which conform to the requirements of 42 U.S.C. §1395mm and §1396b(m), along with any related federal rules and regulations. MCEs were health insurance companies that provided coordinated health care to Medicaid beneficiaries. The MCEs contracted directly with healthcare providers, including hospitals, doctors, and other health care providers to coordinate care and provide the health care services for Medicaid beneficiaries. Providers who contracted with an MCE were known as Participating Providers. Pursuant to the CRAs, ODM distributed the combined state and federal Medicaid funding to the MCEs, which then paid Participating Providers for treatment of Medicaid beneficiaries whose benefits were administered by MCEs.

5. Individuals enrolled in the Medicaid program were commonly referred to as "recipients" or "beneficiaries." Eligible recipients obtained Medicaid coverage directly through ODM, also known as fee-for-service coverage, or joined a Medicaid MCE to manage their benefits.

6. Pursuant to the rules and regulations of the Ohio Medicaid Program, including ODM and Medicaid MCEs, Medicaid only paid for services that were actually rendered by qualified individuals, and they must have been medically necessary and provided in accordance with Federal and State laws, rules, and regulations, including anti-kickback laws.

7. Under the Ohio Medicaid Program, services rendered to Medicaid beneficiaries were required to be reasonable and necessary for the treatment or diagnosis of the beneficiary's medical condition. Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services, or, in some circumstances, under the supervision of licensed professionals. Among other things, providers were required to document the services provided; document the date of service; and identify the provider who performed the service. Providers conveyed this information to ODM or an MCE by submitting claims using billing codes and modifiers. To be reimbursed from the Ohio Medicaid Program for counseling services or behavioral health services, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicaid. Providers were required to maintain patient records to verify that the services were provided as represented on the claim form to Medicaid.

8. Providers who provided services to Medicaid beneficiaries used a number assigned to the patient to fill out claim forms. The claim form was submitted by the provider to make claims for payment to Medicaid. ODM and Medicaid MCEs processed each health insurance claim form and issued payment to the provider for the approved services. Providers submitted claims in paper format or by electronic means.

9. ODM and Medicaid MCEs used the written claim forms and/or electronic invoices to establish the validity of health care claims entitled to payment. A provider who

3

submitted claims to ODM, or Medicaid MCEs, certified that the treatment was provided by a qualified individual, actually given to the client as documented, and was medically necessary for the health of the patient.

10. To become an eligible Medicaid provider, ODM and the Medicaid MCEs required providers to obtain a Provider Agreement by completing a Provider Enrollment Application. Company 1 entered into a Provider Agreement with ODM on or about April 24, 2020, and agreed to abide by all the rules and regulations of the Medicaid program. Company 1 also had provider agreements with various MCEs. These agreements allowed Company 1 to bill for medical services rendered by Company 1 employed providers to Medicaid recipients.

11. On January 1, 2018, ODM updated the policies for providing mental/behavioral health services. Prior to this date, mental/behavioral health providers could submit claims to ODM without identifying the rendering practitioner on the claim. After January 1, 2018, all rendering practitioners were required to enroll in the Medicaid program and affiliate with their employing agency. Each behavioral health agency had to ensure that each of its corresponding employed providers was "affiliated." ODM required that the rendering practitioner for behavioral health services be listed on claims submitted to ODM for payment.

12. ODM required the enrolling practitioners to list the type of license, college degree, and/or years of experience. ODM defined what services could be provided by a practitioner based on the practitioner's licensure and experience.

13. A Qualified Behavioral Health Specialist ("QBHS") was an individual who had received training for, or education in, either mental health or substance use disorders and had demonstrated, prior to or within ninety days of hire, the minimum competencies in basic mental health or substance use disorders. A QBHS had to be supervised by an individual qualified to

4

supervise the provision of services within their scope of practice. A QBHS included both a qualified mental health specialist and a care management specialist.

### C. Medical Billing and Coding

14. Medical providers and health care benefit programs used well-known and standard insurance processing codes to identify certain medical diagnoses and medical treatments or procedures. Current Procedural Terminology ("CPT") and Healthcare Common Procedure Coding System ("HCPCS") codes were used for billing Medicaid beneficiaries.

15. Medical providers recorded diagnoses and medical procedures on a standard claim form known in the industry as the CMS1500 form, which was sent to the beneficiary's health care benefit program. CPT codes had to be designated on the CMS 1500 claim form by the health care provider and then submitted either by mail or electronically to the health care benefit program for payment. By submitting claims using these CPT codes, providers represented to Medicaid that the services depicted in the codes were, in fact, performed or provided.

16. Each Medicaid beneficiary was assigned a unique identification number by the Medicaid Program. Each beneficiary could be identified by reference to his/her unique identification number. Once enrolled in Medicaid, a beneficiary received covered medical services from Medicaid providers.

17. CPT code 90791 was designated for a Psychiatric Diagnostic Evaluation. ODM required the evaluation, also referred to as a mental health assessment, to be conducted by a credentialed professional prior to additional initiation of other services, except in emergency situations. The assessment was a clinical evaluation of a person which was individualized based on age and gender and was culturally appropriate. The assessment determined diagnosis and

5

treatment needs, and was used to establish a treatment plan to address illness or a substance abuse disorder.

18. ODM would only authorize payment of subsequent mental/behavioral health services if the Psychiatric Diagnostic Evaluation was conducted by a properly credentialed professional. A QBHS was not a credentialed professional and was unable to conduct a Psychiatric Diagnostic Evaluation.

19. The development of the treatment plan was a collaborative process between the client and service provider based on a Psychiatric Diagnostic Evaluation, a continuing assessment of needs, and the identification of interventions and services appropriate to the individual's diagnosis and other related needs. Providers could accept a mental health assessment from another provider as long as the assessment was completed within the preceding twelve months.

20. A treatment plan had to be completed within five sessions or one month of admission, whichever was longer, and had to specify agreed upon treatment goals, document response to ongoing treatment, and present documentation that the patient signed off on the treatment plan.

21. HCPCS Code H0036 was designated for Face-to-Face, by telephone, and/or video conferencing, Community Psychiatric Supportive Treatment (CPST). H0036 was billed on a per unit basis. Each unit was equal to 15 minutes of treatment. The purpose of CPST services was to provide specific, measurable, and individualized services to each person served. CPST services focused on the individual's ability to succeed in the community; to identify and access needed services; and to show improvement in school, work and family and integration and contributions within the community.

22. HCPCS Code H2019 was designated for therapeutic behavioral services. H2019 was billed on a per unit basis. Each unit was equal to 15 minutes of treatment. The purpose of therapeutic behavioral services was to provide specific, measurable, and individualized services to each person served. Therapeutic behavioral services were goal-directed and solution-focused.

## SCHEME TO DEFRAUD

23. It was part of the scheme to defraud that at various times:

   a. SMITH and others submitted, caused to be submitted, and allowed to be submitted, billings to Medicaid for counseling services that were not actually performed.

   b. SMITH and others submitted, caused to be submitted, and allowed to be submitted, billings to Medicaid for counseling services that were not actually performed for the amount of time that the visit notes reflected.

   c. SMITH created false progress notes and submitted false progress notes into an Electronic Medical Records ("EMR") system. The progress notes were subsequently used for billing Medicaid for the amount of time indicated in the notes.

## COUNT 1
(Health Care Fraud, 18 U.S.C. §§ 1347 and 2)

The Grand Jury charges:

24. The allegations of paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

25. From on or about March 12, 2021, through on or about May 15, 2022, Defendant PAVIELLE SMITH did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud and to obtain money from federal health care benefit programs by means of false and fraudulent pretenses, representations, and promises.

26. From on or about March 12, 2021, through on or about May 15, 2022, in the

7

Northern District of Ohio, Eastern Division, and elsewhere, Defendant knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicaid, and to obtain by means of the false and fraudulent pretenses, representations, described herein, money and property owned by, and under the custody and control of Medicaid, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Sections 1347 and 2.

COUNTS 2-6
(False Statement Relating to Health Care Matters, 18 U.S.C. §§ 1035 and 2)

The Grand Jury further charges:

27. The allegations of paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

28. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant PAVIELLE SMITH, in a matter involving a health care benefit program, did knowingly and willfully make and use any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items and services; to wit, Defendant made and caused to be made and submitted false statements in the patient records for the following patients in connection with claims for reimbursement on the dates indicated, each patient record constituting a separate count:

| Count | Date | Beneficiary | False Statement |
|---|---|---|---|
| 2 | 3/10/2022 | E.B. | Service Provided: Therapeutic Behavioral Services-H2019 HN Contact: Face-To-Face Location: Home |
| 3 | 5/11/2022 | A.C. | Service Provided: |

Northern District of Ohio, Eastern Division, and elsewhere, Defendant knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicaid, and to obtain by means of the false and fraudulent pretenses, representations, described herein, money and property owned by, and under the custody and control of Medicaid, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Sections 1347 and 2.

COUNTS 2-6
(False Statement Relating to Health Care Matters, 18 U.S.C. §§ 1035 and 2)

The Grand Jury further charges:

27. The allegations of paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

28. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant PAVIELLE SMITH, in a matter involving a health care benefit program, did knowingly and willfully make and use any materially false writing and document knowing the same to contain any materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items and services; to wit, Defendant made and caused to be made and submitted false statements in the patient records for the following patients in connection with claims for reimbursement on the dates indicated, each patient record constituting a separate count:

| Count | Date | Beneficiary | False Statement |
|---|---|---|---|
| 2 | 3/10/2022 | E.B. | Service Provided: Therapeutic Behavioral Services-H2019 HN<br>Contact: Face-To-Face<br>Location: Home |
| 3 | 5/11/2022 | A.C. | Service Provided: |

| | | | |
|---|---|---|---|
| | | | Therapeutic Behavioral Services-H2019 HN<br>Contact: Face-To-Face<br>Location: Home |
| 4 | 5/11/2022 | K.W. | Service Provided:<br>Therapeutic Behavioral Services-H2019 HN<br>Contact: Face-To-Face<br>Location: Home<br>Intervention: QBHS today's meeting took place at the client's home |
| 5 | 5/12/2022 | T.O. | Service Provided:<br>Therapeutic Behavioral Services-H2019 HN<br>Contact: Face-To-Face<br>Location: Home |
| 6 | 5/12/2022 | A.S. | Service Provided:<br>Therapeutic Behavioral Services-H2019 HN<br>Contact: Face-To-Face<br>Location: Home |

All in violation of Title 18, United States Code, Sections 1035 and 2.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.